UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRENDAN BENWAY,
    *Plaintiff*,

v.

JOHN ALDI, et al.,
    *Defendants.*

No. 3:19-CV-208 (VAB)

**RULING AND ORDER ON MOTION TO AMEND**

On February 11, 2019, Brenden Benway ("Plaintiff"), then incarcerated by the State of Connecticut at the Corrigan-Radgowski Correctional Institution ("Corrigan") in Uncasville, Connecticut, sued ten Connecticut Department of Correction ("DOC") officials in their individual and official capacities: Security Risk Group Coordinator John Aldi, Warden Stephen Faucher, Lieutenant Russell, Hearing Officer King, Corrections Officer Campbell, Lieutenant Kelly, Disciplinary Investigator John Doe, Lieutenant Roberts, Lieutenant Hartley, and Disciplinary Report Investigator Acevedo, alleging multiple violations of his civil and constitutional rights under 42 U.S.C. § 1983.[1] Compl., ECF No. 1 (Feb. 11, 2019).

Mr. Benway has filed a motion to amend his Complaint to substitute defendant Disciplinary Investigator John Doe with Disciplinary Investigator Acevedo, and to reinstate the claims for injunctive and declaratory relief that had been previously dismissed as moot. Mot. to Amend, ECF No. 21 (Nov. 05, 2019).[2]

---

[1] In its initial review order, the Court dismissed the action against defendants Aldi, Faucher, Roberts, Hartley, and Acevedo. ECF No. 13 at 1-2 (Sept. 29, 2019) ("IRO").

[2] On December 3, 2019, the defendants filed a motion to dismiss on the basis of qualified immunity. *See* Mot. to Dismiss, ECF No. 24 (Dec. 3, 2019). The Court will consider this motion after it is fully briefed.

1

For the following reasons, Mr. Benway's motion to amend is **GRANTED**.[3]

I.   FACTUAL AND PROCEDURAL BACKGROUND[4]

   A.   Factual Allegations

In March of 2016, Corrections Officers Campbell and Russell allegedly brought Mr. Benway, who had been confined at the New Haven Correctional Center as a pretrial detainee, to the Restrictive Housing Unit without notice. Compl. at 6. The officers allegedly told him that they brought him there because they had found gang-related photographs and colors on his Facebook page. *Id.*

Mr. Benway allegedly told the officers that the content of his Facebook page was protected speech under the First Amendment, but the officers allegedly dismissed him, saying, "What do you think you are, a lawyer?" *Id.* Officer Campbell allegedly told Mr. Benway that the DOC has a contract with Facebook, that the page content added three points to his Security Risk Group point system scale, and that his tattoos added another two points to his scale. *Id.* Mr. Benway allegedly remained in the Restricted Housing Unit for six days without a disciplinary report or a hearing issued on his security risk group classification. *Id.*

While allegedly confined in the Restricted Housing Unit, Disciplinary Report Investigator Doe allegedly came to Mr. Benway's cell and allegedly told him that he was not going to "beat the SRG affiliation" because there was significant proof of gang activity on his Facebook page. *Id.* at 7. When Mr. Benway allegedly asked Investigator Doe how he could be confined in the Restricted

---

[3] Mr. Benway's motion to amend makes two requests. He has styled each request as a separate motion to amend. ECF No. 21. The Court construes Mr. Benway's requests as one motion to amend.

[4] The Court incorporates herein the factual allegations recited in the IRO, which were drawn from the Complaint. IRO at 2-8. The Court also includes only as much of the factual allegations as are necessary to address this motion to amend the Complaint.

Housing Unit without a disciplinary report, Investigator Doe allegedly replied that the content of Mr. Benway's Facebook page was enough. *Id.*

Several days later, Mr. Benway allegedly was woken up and told that he had to attend a hearing on his Security Risk Group affiliation. *Id*. During the hearing, Lieutenant Russell allegedly presented two options: sign a statement indicating he is a gang member or lose between sixty and ninety days of commissary, phone, mail, and visitation privileges. *Id.* Mr. Benway allegedly signed the statement to avoid the sanctions. *Id.* Lieutenant Russell and Hearing Officer King allegedly did not permit Mr. Benway to give an oral statement to explain the content of his Facebook page. *Id.* The signed statement allegedly meant Mr. Benway was designated as a member of the Bloods gang and sent to Phase 3 of the Department of Correction's Security Risk Group program at Corrigan. *Id.* at 8.

While allegedly confined at Corrigan, Mr. Benway allegedly reviewed the Department of Correction's Administrative Directives regarding Security Risk Group affiliation and penal discipline. *Id.* Nothing in those directives allegedly gave Officers Campbell, Russell, King, or any Department of Correction official the authority to place him in the restricted housing unit based on the content of his Facebook page. *Id.*

In April 2016, Mr. Benway allegedly wrote a letter to Security Risk Group Coordinator Aldi discussing the circumstances of his confinement. He allegedly never received a response. *Id.* He also allegedly obtained his disciplinary report history, which allegedly revealed he received no disciplinary reports between 2016 and 2017. *Id.*

Mr. Benway's confinement in the Security Risk Group allegedly had mental and physical repercussions. He allegedly could not receive good time credits, had limited visitation and phone privileges, could not participate in any vocational, religious, or educational programs, and had no access to a library. *Id.* at 9, 12-13. He allegedly was forced to remain in his cell more than general population inmates and allegedly had limited recreation time. *Id.* at 9. Inmates in the

3

Security Risk Group allegedly do not receive jackets during outside recreation. *Id*. at 10. When there is a lockdown due to a security issue, inmates allegedly are confined in their cells for days without the ability to shower, and their commissary privileges are reduced. *Id*.

Cell conditions allegedly were sub-standard. The unit allegedly did not have heat or hot water. *Id*. at 10-11. Mr. Benway's toilet allegedly smelled of feces and the sink in his cell allegedly was clogged. *Id*. at 10. Garbage allegedly accumulated for more than eight hours at a time, attracting flies and creating an unsanitary environment. *Id*. at 10-11. Because there are allegedly no congregate meals in SRG, Mr. Benway allegedly was forced to eat meals in these conditions. *Id*. at 10. Inmates in the Security Risk Group allegedly are allowed to clean their cells once a week. *Id*. at 11. Mr. Benway allegedly suffered from sleep deprivation and shook constantly because of these conditions. *Id.*

He allegedly spoke with Lieutenant Kelly, the unit manager, about these conditions, but Lieutenant Kelly allegedly just "brush[ed] [him] off" and allegedly told him not to come to jail. *Id.* at 12. When he allegedly re-entered Department of Corrections custody in October 2018, Mr. Benway allegedly was forced to remain in segregation until he could be transferred back to the Security Risk Group unit at Corrigan. *Id.* at 14.

On January 2, 2019, Mr. Benway allegedly was housed in the E-Pod Security Risk Group unit but was brought to the Restricted Housing Unit in B-Pod for a Class-A disciplinary report. *Id.* at 16. He allegedly wrote to Lieutenant Kelly, the supervisor of the E-Pod Unit, explaining that he did not feel safe in the B-Pod unit because of other gang members housed there. *Id.* One week later, while in the shower, he allegedly told Corrections Officer Melton that he was scared to go back to the B-Pod unit because of problems he had outside of prison. *Id.* The officer allegedly ignored Mr. Benway and placed him in the B-Pod. *Id.*

4

On January 10, 2019, Mr. Benway allegedly wrote to Warden Faucher regarding his safety at Corrigan. *Id.* at 16. He allegedly never received a response. *Id.* Mr. Benway allegedly fears for his life and has been diagnosed with post-traumatic stress disorder and attention deficit hyperactivity disorder. *Id.* Gang members in the unit allegedly often force inmates to either join their gang or be assaulted. *Id.*

**B. Procedural Background**

On February 11, 2019, Mr. Benway sued Security Risk Group Coordinator John Aldi, Warden Stephen Faucher, Lieutenant Russell, Hearing Officer King, Corrections Officer Campbell, Lieutenant Kelly, Disciplinary Investigator John Doe, Lieutenant Roberts, Lieutenant Hartley, and Disciplinary Report investigator Acevedo, alleging violations of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. Compl. at 1-3, 20-22.

Since filing his Complaint, Mr. Benway has twice moved for leave to amend the Complaint. Mot. for Leave to Amend, ECF No. 8 (Feb. 21, 2019) ("First Mot. To Amend"); Mot. for Leave to Amend, ECF No. 11 (Mar. 14, 2019) ("Second Mot. To Amend").

On April 21, 2019, Mr. Benway notified the Court of his imminent release from Corrigan. Notice of Change of Address, ECF No. 12 (Apr. 30, 2019).[5]

In his motion to amend dated February 21, 2019, Mr. Benway requested to supplement the Complaint with four relevant exhibits. First Mot. To Amend.

In his motion to amend, dated March 14, 2019, Mr. Benway sought to add new claims alleging that defendants Mercado, Conroy, and Hill retaliated against him for filing lawsuits against the Department of Corrections, damaged his personal property, and interfered with his ability to

---

[5] On April 30, 2019, Mr. Benway was released from state custody.

freely exercise his religion in violation of his First Amendment and Fourteenth Amendment Rights. Second Mot. To Amend at 4.

In an initial review order, the Court addressed Mr. Benway's two motions to amend, granting the first and denying the second as futile. IRO at 11-12. Specifically, the Court concluded that the second motion to amend sought to add claims against defendants Mercado, Conroy and Hill that represented separate occurrences from those at issue in the original Complaint and failed to satisfy Federal Rule of Civil Procedure 20(a)(2). *Id.*

The initial review order dismissed Mr. Benway's claims for injunctive and declaratory relief as moot and dismissed his claims concerning excessive force, retaliation, and religious freedom without prejudice to re-filing, as those claims were improperly joined. *Id.* at 23.

The Court permitted Mr. Benway's First Amendment free speech claim and Fourteenth Amendment procedural due process claims for damages to proceed against Corrections Officer Campbell, Lieutenant Russell, and Hearing Officer King in their individual capacities; and his Fourteenth Amendment conditions of confinement claim for damages to proceed against Lieutenant Kelly in that officer's individual capacity. *Id.*

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a),

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(2). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id*.

Leave to amend may be "freely given" in the absence of bad faith, undue delay, unfair prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (citation omitted)).

### III. DISCUSSION

In its initial review order, the Court found that Mr. Benway stated a plausible claim that defendants Campbell, Russell, Doe (if properly identified), and King violated his First Amendment right to free speech by placing him in the Security Risk Group unit as a pretrial detainee based on the content of his Facebook page. IRO at 15.

The Court also found that Mr. Benway had stated a plausible Fourteenth Amendment claim against defendants Campbell, Russell, and King due to their failure to provide him with an opportunity to be heard prior to designating him to Security Risk Group and at his post-designation hearing when he was faced either revocation of various privileges or signing a statement. *Id.* at 16. Additionally, the Court held that Mr. Benway had stated a plausible Fourteenth Amendment conditions of confinement claim for damages against defendant Kelly in that officer's individual capacity. *Id.*

#### A. Substitution of Defendant John Doe with Disciplinary Investigator Acevedo

In its initial review order, the Court stated that it would permit the First Amendment claim to proceed against defendant Doe if he was properly identified. IRO at 15. Mr. Benway has now identified this defendant as Disciplinary Investigator Acevedo. Mot. to Amend at 1.

Mr. Benway's motion to amend to replace defendant John Doe with Disciplinary Investigator Acevedo is **GRANTED**.

### B. Reinstatement of Claims for Injunctive and Declaratory Relief

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend once as a matter of course, or, once the period has elapsed, move for leave to file an amended complaint. Fed. R. Civ. P. 15(a). Parties who fail to file an amended complaint within 15(a)(1)'s time period, or who seek additional amendments, may seek the consent of their opposing party or the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id*.

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment." *Id*.; *see also Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. Ed 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of showing of prejudice." (internal quotation marks and citations omitted)).

Although the rules do not require detailed allegations, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Twombly*, 550 U.S. at 555-56. Conclusory allegations

are insufficient. *Iqbal*, 556 U.S. at 678. Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

It is also well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude of pro se litigants).

In *Ex parte Young*, the United States Supreme Court recognized an exception to state sovereign immunity from suit under the Eleventh Amendment, permitting a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law. 209 U.S. 123, 155–56 (1908); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) ("[S]overeign immunity [does] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them 'immunity from responsibility to the supreme authority of the United States.'" (quoting *Ex Parte Young*, 209 U.S. at 160)). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). A request for prospective relief is only cognizable if an ongoing constitutional violation is taking place. *Va. Office*

*for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

In its initial review order, the Court dismissed Mr. Benway's claims for injunctive and declaratory relief as moot because he was no longer incarcerated. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). *Id.* at 11. Mr. Benway represents that he is now again at Corrigan-Radgowski Correctional Institution under the same conditions of confinement as his prior placement. Mot. to Amend at 2. He seeks reinstatement of his claims for injunctive and declaratory relief. *Id.*

Mr. Benway's Complaint requested a preliminary and permanent injunction ordering Warden Faucher and Security Risk Group Coordinator Aldi to place him into general population and to cease the unconstitutional conditions of confinement while the case proceeds. Compl. at 23. A claim for injunctive relief may only proceed against a defendant to the extent that a defendant has the power to remedy the alleged on-going constitutional violation. *See Scozzari v. Santiago*, No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019) (citing *Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act)).

Here, Mr. Benway plausibly seeks prospective relief on the basis of alleged on-going unconstitutional conditions of confinement. The Court has already concluded that Mr. Benway stated plausible Fourteenth Amendment violations based on his Security Risk Group conditions of confinement. IRO at 19, 23. The Department of Correction website indicates that Mr. Faucher is no longer the Warden of Corrigan and has been replaced by Anthony Corcella.[6] Mr. Benway,

---

[6] Corrigan-Radgowski Corr. Ctr., Ct. State Dep't of Corr., https://portal.ct.gov/DOC/Facility/Corrigan-Radgowski-CC (last accessed Jan. 3, 2020).

however, may assert official capacity claims against Warden Corcella and Security Risk Group Coordinator Aldi, who plausibly have the authority to grant him injunctive relief by placing him in the general population. *See Vaughan v. Aldi*, No. 3:19-cv-00107 (JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019) (citing *Gonzalez v. Feinerman*, 666 F.3d 311, 315 (7th Cir. 2011) (*per curiam*) (prison warden was proper defendant for official-capacity claim seeking injunctive relief, although he lacked personal involvement in alleged constitutional violation)). *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

The Court will permit Mr. Benway's claims for injunctive relief to proceed against Warden Corcella and Security Risk Group Coordinator Aldi in their official capacities to be placed in the general population due to allegedly unconstitutional conditions of confinement. *See Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996) (pro se prisoner's claim for injunctive relief was allowed to proceed as defendants "knew that he required his prescribed eye-glasses to correct serious deficiencies, yet failed to respond to his complaint" and prisoner plaintiff "alleged he had been denied proper medical attention").

**C. Reinstatement of Claim for Declaratory Relief**

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. Am. Inst. of Certified Pub. Accountants*, 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Thus, it allows parties to resolve claims prospectively before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc.*, 838 F.2d 35, 37 (2d Cir. 1988). A declaratory judgment concerns prospective relief that is

only available if a plaintiff can show "a sufficient likelihood" of being wronged again "in a similar way." *Macavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012).

Mr. Benway seeks to reinstate his claim for declaratory relief. Mot. to Amend at 2. In his Complaint, Mr. Benway also requested "a declaration that the acts and omissions described herein violate his rights under the constitution and laws of the United States[.]" Compl. at 23.

Mr. Benway cannot seek a declaration that the Defendants' past conduct violated his constitutional rights. *See P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146. The Court, however, will permit the Plaintiff to seek a declaratory relief with regard to the continuing allegedly unconstitutional conditions of confinement at Corrigan. This request for declaratory relief may proceed against Warden Corcella and Security Risk Group Coordinator Aldi in their official capacities since they plausibly have the authority remove or retain Mr. Benway in Security Risk Group confinement.

Accordingly, Mr. Benway's motion to amend is granted and his claims for prospective injunctive and declaratory relief may proceed.

## IV. CONCLUSION

The Court enters the following orders:

(1) Mr. Benway's motion to amend is **GRANTED**. Defendant John Doe has been identified as Disciplinary Investigator Acevedo. The case shall proceed on Mr. Benway's First Amendment claims against Disciplinary Investigator Acevedo in his individual capacity. Mr. Benway may proceed against Warden Corcella and Security Risk Group Coordinator Aldi in their official capacities for injunctive and declaratory relief.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint (ECF No. 1), the Initial Review Order (ECF No. 23), and this Ruling on

the Motion to Amend to the United States Marshal Service. The U.S. Marshal is directed to effect service of the complaint on Warden Corcella and Security Risk Group Coordinator Aldi in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, by **January 24, 2020** and file a return of service by **February 7, 2020**.

(3) The Clerk shall verify the current work address for defendant Investigator Acevedo with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this Ruling on Motion to Amend to him at his confirmed address by **January 24, 2020**, and report on the status of the waiver request by **February 7, 2020**. If Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on defendant, and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk shall mail a courtesy copy of the complaint and this Ruling on Motion to Amend to the DOC Office of Legal Affairs.

(5) Defendants Acevedo, Corcella and Aldi shall file their response to the complaint, either an answer or motion to dismiss by **March 27, 2020**. If a defendant chooses to file an Answer, that defendant shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Rules 26 through 37 of the Federal Rules of Civil Procedure, shall be completed by **June 5, 2020**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **July 10, 2020**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Benway changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Benway must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Benway has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the Defendants or defense counsel of his new address.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of January, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE